**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TINA ROSE YULI, | CIVIL ACTION NO. 13-4617 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| LAKEWOOD BOARD OF EDUCATION, et al., | |
| Defendants. | |

**COOPER, District Judge**

The plaintiff, former Lakewood High School principal Tina Rose Yuli, brings this action against: her former employer, the Lakewood Board of Education ("the Board"); the former Lakewood School District Superintendent of Schools, Lydia R. Silva; the former Board Attorney, Michel Inzelbuch; and the former Board President, Meir Grunhut (collectively, "the Defendants").  (See dkt. entry no. 3, Am. Compl. at ¶¶ 3, 7–10.)  Yuli brings claims under: the New Jersey Law Against Discrimination ("NJLAD"); the New Jersey Civil Rights Act ("NJCRA") for violations of the New Jersey Constitution; and 42 U.S.C. §§ ("Sections") 1983 and 1985 for violations of the United States Constitution under the Due Process Clause, the Equal Protection Clause, and the First Amendment.  (See generally id.)[1]

---

[1] Yuli brings the following claims under NJLAD: (1) sex discrimination; (2) retaliation; (3) hostile work environment; (4) aiding, abetting, inciting, compelling, and/or coercing others to engage in sex discrimination and retaliation; and (5) failure to hire.  (Id. at ¶¶ 52–60, 73–80.)

The Defendants now separately move, in effect, to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and Rule 12(c).   (See dkt. entry no. 37–1, Inzelbuch Br. at 6; dkt. entry no. 38–3, Board, Grunhut, Silva Br. at 1 (cross-referencing Inzelbuch Br.); dkt. entry no. 41, Inzelbuch Reply Br. at 1; dkt. entry no. 43, Board, Grunhut, Silva Letter at 1 (adopting "arguments set forth in co-defendant Inzelbuch's brief").)[2]

The Court will resolve the separate motions without oral argument.  See L.Civ.R. 78.1(b).  For the following reasons, the Court will deny Inzelbuch's motion to dismiss the amended complaint without prejudice.  The Court will deny the separate motion by the Board, Grunhut, and Silva to dismiss the amended complaint without prejudice.

## BACKGROUND

Yuli alleges that the Board hired her in July 2009 to serve as the Lakewood High School ("Lakewood") principal.  (See Am. Compl. at ¶ 13.)  Shortly thereafter, Yuli allegedly learned that Lakewood officials diverted state and federal funding to local private religious institutions.  (See generally id.)  She promptly reported the alleged "misuse of resources" to Silva and the Board.  (See id. at ¶¶ 20, 21.)  According to Yuli, the Board "labeled her as a troublemaker" and retaliated against her.  (Id. at ¶¶ 21–22.)  Yuli alleges, for example, that the Defendants "conspired to oust" her from Lakewood.  (Dkt. entry no. 29, Yuli Br. at 2.)

---

[2] Because the Board, Grunhut, and Silva adopt Inzelbuch's arguments, the Court will cite the Inzelbuch briefing hereafter.  (See, e.g., Board, Grunhut, Silva Br. at 3 ("As set forth in the brief filed in support of Defendant Inzelbuch's Fed.R.Civ.P.12(b)(6) motion, the [amended] complaint should be dismissed…").)

Specifically, Yuli alleges that the Defendants: (1) repeatedly refused her requests for a guidance director and additional security; (2) issued <u>Rice</u> disciplinary notices regarding "contrived infractions"; (3) treated her with hostility and intimidation "on nearly a daily basis"; (4) "intentionally refus[ed] to conduct an on-site in-person [performance] evaluation"; (5) threatened to transfer her to an elementary school and ultimately voted in support of the transfer; (6) caused her constructive discharge and replaced her with a lesser-qualified male candidate with no prior experience as principal; and (7) refused to interview her for the vacant Lakewood principal position because of "her gender, and in retaliation for … her prior complaints against [the Board] and for exercising her protected rights of free speech." (<u>See</u> <u>generally</u> <u>id.</u>)[3]

Yuli alleges that Silva issued her a negative performance evaluation even though graduation rates, tests scores, and attendance rates improved during her tenure at Lakewood. (<u>See</u> Am. Compl. at ¶¶ 16, 36.) Even though she "performed all … duties satisfactorily," according to Yuli, Silva publicly stated that she was "not qualified to run the high school" in April 2011. (<u>Id.</u> at ¶¶ 13–14, 37.) Yuli alleges that during the same time period, Silva "orchestrated the demotion, termination and transfer of three other female administrators, while similarly situated male administrators were promoted." (<u>Id.</u> at ¶ 44.) Yuli ultimately resigned on August 1, 2011, allegedly in response to the retaliatory and discriminatory

---

[3] <u>Rice</u> notices provide "reasonable notice" of pending personnel matters to, among others, New Jersey public school teachers and principals.  <u>See</u> <u>Rice v. Union Cnty. Reg'l High Sch. Bd. of Ed.</u>, 382 A.2d 386, 391 (N.J. App. Div. 1977), <u>certif. denied</u>, 386 A.2d 863 (N.J. 1978).

treatment.  (See generally id.)  She characterizes the resignation as a constructive discharge.

(Id. at ¶¶ 13–14.)

## STANDARD OF REVIEW

When reviewing a motion to dismiss, the Court must: (1) accept all of the well-pleaded

factual allegations in the amended complaint as true; and (2) construe the amended complaint

in the light most favorable to the plaintiff.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544,

555–56 (2007); Mann v. Brenner, 375 Fed.Appx. 232, 235 (3d Cir. 2010).  The Court may

also consider "exhibits attached to the [amended] complaint, matters of public record, and

documents that form the basis of a claim."  Turner v. Leggett, 421 Fed.Appx. 129, 131 (3d

Cir. 2011) (internal quotation and citation omitted).

A plaintiff must state a claim for relief that is plausible on its face in order to survive a

motion to dismiss.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Facial plausibility exists

when the factual content related to the claim permits the Court to draw a reasonable inference

that a defendant is liable for the alleged misconduct.  See id.  Judicial experience and

common sense guide this determination.  See id. at 679.  Although the Court must accept

all factual allegations as true, the Court need not do the same for legal conclusions.  See id. at

662–63.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements" cannot survive a motion to dismiss.  Id. at 678.

4

## DISCUSSION

### I.      Count IV-Count VI: Due Process, Failure to Hire, and NJCRA

The Defendants fail to address Yuli's due process claims under Section 1983 and the failure to hire claims under NJLAD.  (See generally Am. Compl.; Inzelbuch Br.; Inzelbuch Reply Br.; see also Yuli Br. at 23 (arguing that the Court should not dismiss the failure to hire claim because the Defendants did not address it).)  Moreover, although the Defendants appear to challenge Yuli's free speech claims under the NJCRA, the brief exclusively references the First Amendment standard.  (See generally Am. Compl.; Inzelbuch Br. at 23 (arguing that "the allegations of the amended complaint cannot sustain a [NJCRA] claim" but exclusively relying upon the standard governing the "First Amendment retaliation claim" thereafter).)

Pursuant to Rule 12(b)(6) and 12(c), to prevail on a motion to dismiss, a defendant must demonstrate that a plaintiff does not state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6); Fed.R.Civ.P. 12(c); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  The Defendants here fail to establish that Yuli does not state due process claims, a failure to hire claim, or a free speech claim under the NJCRA.  Thus, the separate motions insofar as they may be construed to seek dismissal of those claims are denied.  Hedges, 404 F.3d at 744 (stating under Rule 12(b)(6) defendant "bears the burden of showing that no claim has been presented").

### II.     Count IV-Count V: Free Speech Retaliation

The First Amendment protects a public employee's right to speak as a citizen on matters of public concern under certain circumstances.  See Garcetti v. Ceballos, 547 U.S.

5

410, 417 (2006).  A government entity, however, "has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations."  Id. at 418. Accordingly, government entities have limited power to restrict statements that are unrelated to official job duties.  See id. at 426.

A public employee pursuing a First Amendment retaliation claim must allege facts sufficient to establish: (1) participation in a protected activity; and (2) that the protected activity was a substantial factor in the alleged retaliatory action.  See Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006).  Whereas the first factor is a question of law, the second factor is a question of fact.  See id.  Once a public employee satisfies both factors, the burden shifts to the defendants to "demonstrate that the same action would occur if the speech had not occurred."  Kimmett v. Corbett, 554 Fed.Appx. 106, 111 (3d Cir. 2014) (internal citation omitted).

A public employee's statement is protected when: (1) the employee spoke as a citizen; (2) the statement involved a matter of public concern; and (3) the government employer did not have an adequate justification to respond to the employee in a different manner than it would a member of the general public.  See Hill, 455 F.3d at 241–42.  To determine whether a plaintiff satisfies the third factor, the Court balances free speech interests against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  Kimmett, 554 Fed.Appx. at 111 (internal citation omitted).  The Court will analyze each factor.

## A.    Citizen Speech

First Amendment protection applies when a public employee makes a statement as "a citizen," rather than pursuant to "official duties." Garcetti, 547 U.S. at 421–26. Courts must conduct "practical" inquiries to determine whether speech is related to "official duties" sufficient to bar First Amendment protection. Id. at 424–25.  The Court considers, among other factors, daily operations, job duties, and the nature, content, and context of the public statement. See id. at 421 (holding that public calendar deputy drafted memorandum pursuant to "official duties" because "that is part of what he was employed to do"); Pickering v. Bd. of Educ., 391 U.S. 563, 574 (1968) (holding that "statements by public officials on matters of public concern must be accorded First Amendment protection despite the fact that the statements are directed at … nominal superiors"); Beyer v. Duncannon Borough, 428 Fed.Appx 149, 153 (3d Cir. 2011) (holding that police officer alleged sufficient facts that he spoke as a citizen – and not pursuant to official duties – because he conducted "hours of research, on his own time"); Sexton v. Cnty. of York, No. 12-402, 2012 WL 2192250, at *4 (M.D. Pa. June 14, 2014) (holding that routine operations were "the critical fact" to determine whether public employee acted pursuant to official duties).

Yuli's amended complaint and briefing allege facts that, viewed in the light most favorable to her, support the inference that she did not report the alleged "misuse of resources" pursuant to official duties.  (Am. Compl. at ¶¶ 21–22; Yuli Br. at 16.)  Yuli, for example, specifically avers that her "job duties as a principal [did] not include discovering

whether … her superiors siphon[ed] money from public schools for use by religious schools in the area."  (Yuli Br. at 16.)

The Defendants argue that the amended complaint suggests that Yuli "discovered the alleged misuse of funds in the course of fulfilling her official duties as principal, and duly reported the alleged misconduct to 'her superiors,' the superintendent and [the Board], in her official capacity."  (Inzelbuch Br. at 24.)  The Defendants, however, fail to cite specific portions of the amended complaint to demonstrate that Yuli did not speak as a citizen.  (See generally id.)  Moreover, the Defendants do not provide factual detail regarding Yuli's former job duties or the nature, content, and context of her statement.  (See generally id.; see also Yuli Br.)  The Court, therefore, has limited facts to guide this determination.  Because the First Amendment retaliation claim implicates factual questions regarding Yuli's duties as Lakewood principal and the nature, content, and context of her statements, it would be premature to resolve the issue on a motion to dismiss.  Flanagan v. Borough of Laflin, No. 13-2863, 2014 WL 1315400, at *8 (M.D. Pa. Mar. 28, 2014) (holding that because plaintiff's claims implicated "factual questions about [plaintiff's] duties as Police Chief, it would be premature to resolve … the contours of his job duties on a motion to dismiss").

### B.    Matter of Public Concern and Justification

A public employee speaks regarding a matter of public concern when the statement "can be fairly characterized as addressing a matter of political, social, or other community concern."  Id.  The statement's content, form, and context are relevant

considerations.  See id.  Speech concerning potential wrongdoing or breach of public

trust, for example, addresses social, political, and community concerns.  See Holder v.

City of Allentown, 987 F.2d 188, 195 (3d Cir. 1993).  When a statement "bring[s] to light

actual or potential wrongdoing or breach of public trust," particularly by government

officials, the content is related to a matter of public concern.  Connick v. Myers, 461 U.S.

138, 148 (1983).

Yuli alleges that her statements informed Silva and the Board that Lakewood

officials diverted public funds "for the benefit of students attending private religious

schools in and around Lakewood."  (Am. Compl. at ¶ 20.)  According to Yuli, the fact that

the statement concerned "illegal conduct by government officials in regard to diversion of

public resources … is the quintessential example *why* government employees are

afforded First Amendment protection."  (Yuli Br. at 16 (emphasis in original).)  The

Defendants provide no counterargument.  (See generally Inzelbuch Br.; Inzelbuch Reply

Br.)  Accordingly, the Court finds that because Yuli reported an alleged misuse of public

funds, her statements implicated matters of public concern sufficient to survive a motion

to dismiss.  See Pickering, 391 U.S. at 572 ("Teachers are … most likely to have

informed and definite opinions as to how funds allotted to the operations of the schools

should be spent.  Accordingly, it is essential that they be able to speak out freely on such

questions without fear of retaliatory dismissal."); Flanagan, 2014 WL 1315400, at *8

(holding that speech concerning public officials' failure "to properly fulfill their public

responsibilities" is sufficient to survive a motion to dismiss).

### C.     Causal Nexus Requirement

A public employee must establish a causal inference between the protected statement and alleged retaliatory act to state a First Amendment retaliation claim.  See Lauren W. ex. rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).  A "temporal proximity between the protected activity and the alleged retaliatory action" and "a pattern of antagonism coupled with timing to establish a causal link" demonstrate the requisite causal inference.  Id.  Yuli establishes both in this case.

Yuli alleges several retaliatory actions that, taken as true, establish a "temporal proximity" and "causal link" between her statement and the retaliatory actions.  Id. According to Yuli, she performed her job duties satisfactorily.  (See Am. Compl. at ¶ 14.) To demonstrate positive job performance, Yuli alleges that attendance, graduation rates, and test scores improved during her tenure at Lakewood.  (See id. at ¶ 16.)  After Yuli complained about the "misuse of resources," however, she alleges that the Defendants took several retaliatory actions against her.  (See generally id.)  Specifically, Yuli alleges that the Board refused to provide necessary resources to Lakewood, issued disciplinary notices for "various contrived infractions," publicly disparaged her, and transferred her to an elementary school.  (See id. at ¶¶ 23–32, 37–45.)

The Defendants argue that Yuli does not plead facts with sufficient particularity to survive a motion to dismiss.  (See, e.g., Inzelbuch Br. at 25.)  Yuli, however, alleges sufficient facts to demonstrate "more than a sheer possibility" that the Defendants retaliated against her in response to her alleged statement.  Iqbal, 556 U.S. at 678 (requiring complaint state

sufficient factual matter, accepted as true, providing "more than a sheer possibility that a defendant has acted unlawfully"). The Court, accepting Yuli's allegations in the amended complaint as true, also finds that Yuli establishes the requisite causal connection to proceed with a First Amendment retaliation claim. See Flanagan, 2014 WL 1315400, at *8. Yuli alleges that she "became aware of the misuse of funds" and "immediately notified" Silva and the Board in 2009. (Yuli Br. at 2.) According to Yuli, the Defendants persistently retaliated against her until she resigned about two years later. (See generally id.) Accordingly, the parts of the separate motions seeking to dismiss this claim will be denied.[4]

## III.    Count I: NJLAD Retaliation

Yuli brings discrimination and unlawful retaliation claims under NJLAD, which prohibits an employer from discriminating or retaliating against an employee on the basis of sex. (See generally Am. Compl.)[5] NJLAD also prohibits an employer from retaliating against an employee by taking "reprisals against any person because that person has opposed any practices or acts forbidden under [NJLAD]." N.J.S.A. 10:5–12(d). NJLAD

---

[4] Because the Court finds the amended complaint provides notice regarding Yuli's First Amendment claim, the Defendants must rely upon "liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002).

[5] The Court recognizes that Yuli initially brought NJLAD claims that included, but were not limited to, "hostile work environment, sexual harassment, and termination of employment." (See Am. Compl. at ¶ 53.) Because Yuli's responsive papers exclusively address the retaliation and hostile work environment claims, however, the Court's analysis is limited to those causes of action. (See, e.g., Yuli Br. at 5–11.)

recognizes that reprisals are acts intended to "coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of … any right granted" under the statute.  Id.

### A.     Retaliation Standard

To establish a prima facie retaliation claim under NJLAD, a plaintiff must demonstrate: (1) participation in a protected activity; (2) the occurrence of an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action.  See Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001).

Federal anti-discrimination legislation may determine whether an employer's conduct constitutes an adverse employment action under NJLAD.  See Silvestre v. Bell Atl. Corp., 973 F.Supp. 475, 481 (D.N.J. 1997).  Acts that cause "loss of status, a clouding of job responsibilities, diminution in authority, disadvantageous transfers or assignments, and toleration of harassment by other employees" are adverse employment actions under federal anti-discrimination legislation and NJLAD.  Mancini v. Twp. of Teaneck, 794 A.2d 185, 207–08 (N.J. App. Div. 2002).  Moreover, assigning an employee to "different or less desirable tasks can be sufficient to constitute an adverse employment action."  Id. at 208.

Whether an employer's conduct rises to the level of an adverse employment action is based upon an objective reasonableness standard.  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 71 (2006).  The plaintiff must demonstrate that a reasonable employee would have found that the alleged retaliatory actions altered the employment conditions in an important or a material manner in order to satisfy the objective

12

reasonableness standard.  Id. at 68–70; see also El-Sioufi v. St. Peter's Univ. Hosp., 887

A.2d 1170, 1177 (N.J. App. Div. 2005).  This determination – which is reserved for the

factfinder – also hinges upon the "totality of circumstances."  Moore v. City of

Philadelphia, 461 F.3d 331, 341–47 (2006).

### B.      Application

The parties disagree as to whether the transfer to the elementary school constituted an

adverse employment action.  (Compare Inzelbuch Br. at 8–9, with Yuli Br. at 5–6.)  Yuli

characterizes the transfer as a "demotion."  (See Am. Compl. at ¶ 5.)  According to Yuli, the

Defendants "demoted" her "in retaliation for … exercising … [her] constitutional rights and

for daring to be female."  (Yuli Br. at 5.)  She requests an opportunity to demonstrate that the

"demotion" varied in terms of "prestige, financial security, and career trajectory" through

discovery and expert opinion.  (Id. at 8, 18.)

Yuli argues that transferring a high school principal to an elementary school "is widely

considered … a career set back and demotion."  (Am. Compl. at ¶ 19.)  Yuli references

Silva's disparaging remarks regarding her qualifications to support an inference that

elementary schools hire lesser-qualified candidates.  (See Yuli Br. at 1, 7.)  Because Silva

publicly stated that Yuli was unqualified to serve as a high school principal, Yuli argues "it

would make little sense" for the Board to "laterally transfer" her to "a position of equal

responsibilities and prestige."  (Id. at 7.)  The Court, accepting these statements as true,

agrees.  See Iqbal, 556 U.S. at 678 (holding that to survive motion to dismiss, plaintiff must

plead factual content to persuade the Court to grant reasonable inferences that defendant is liable for the alleged misconduct).

The Defendants argue that Yuli's retaliation claim exclusively "center[s] upon her alleged 'demotion'." (See Inzelbuch Br. at 1.) Because the transfer did not impact Yuli's "pay or other benefits," the Defendants characterize the decision as a "lateral transfer [that] does not qualify as an adverse employment action as a matter of law." (Id. at 8.) The Court rejects this argument because Yuli need not "show that the adverse employment action resulted in financial hardship." Ivan v. Cnty. of Middlesex, 595 F.Supp.2d 425, 471 (D.N.J. 2009).

The Defendants argue that Yuli failed to "demonstrate any material changes in [her] duties or responsibilities following [the] lateral transfer" and urge the Court to ignore her "subjective preference." (Inzelbuch Br. at 9, 12.) According to the Defendants, Yuli's claims must fail, because she does not allege that "she was suspended, fired, or suffered a loss of pay as a result of any of the complained-of conduct at issue." (Id. at 14.)[6] The Defendants also argue that the Board's refusal of resources and commencement of disciplinary proceedings against Yuli did not constitute adverse employment actions. (Id. at 13–14.)

The Court rejects the Defendants' arguments. Viewing the alleged facts in the light most favorable to Yuli, the Court cannot find that a reasonable employee would not view the

---

[6] The Court also notes that, compared to the facts alleged here, the Defendants cite cases where the plaintiffs therein experienced minor changes to the terms and conditions of employment. The majority of these cases, however, were decided on motions for summary judgment. (See Inzelbuch Br. at 9–14.)

Defendants' actions as altering Yuli's employment terms "in an important or material manner." This is particularly true because, in addition to characterizing the transfer as a "demotion," Yuli alleges that the Defendants publicly disparaged her, declined to provide her school with necessary resources, issued a negative performance evaluation, and refused to rehire her. Accordingly, because the Court finds that the amended complaint states a prima facie retaliation claim, the parts of the separate motions seeking to dismiss this claim will be denied.

## IV.    Count II: NJLAD Hostile Work Environment

A female plaintiff must allege that she was subjected to severe or pervasive conduct because of her sex in order to establish a viable hostile work environment claim under NJLAD. Lehmann v. Toys 'R' Us, 626 A.2d 445, 453 (N.J. 1993). The plaintiff must demonstrate that: (1) the employer would not have engaged in the conduct "but-for" the employee's sex; and (2) the conduct was sufficiently severe or pervasive to alter an employment condition. Id. at 453–54. Isolated insults or off-hand remarks will not suffice. See Mandel v. UBS/PaineWebber, Inc., 860 A.2d 945, 955 (N.J. App. Div. 2004). A plaintiff may state a hostile work environment claim, however, by citing numerous incidents that were collectively severe or pervasive. Lehmann, 626 A.2d at 455.

The hostile work environment standard is objective, and the factfinder must consider the "totality of circumstances" to determine whether a reasonable person would have viewed the employment environment as sufficiently hostile. Id. at 444–46. The evidentiary burden, however, is not onerous. Marzano v. Computer Sci. Corp., 91 F.3d 497, 508 (3d Cir. 1996)

(holding a plaintiff must "demonstrate … that [the] factual scenario is compatible with discriminatory intent"). Rather, a plaintiff need only persuade the Court that "discrimination [based upon sex] could be a reason for the employer's action." Id.

### A.    But-For Requirement

The parties disagree as to whether the Defendants engaged in the alleged discriminatory conduct because of Yuli's sex. (Compare Yuli Br. at 18–19, with Inzelbuch Br. at 16–20.) Yuli alleges that the Defendants subjected her to "negative treatment" because of her sex and ultimately "demoted" her to an elementary school and replaced her with a lesser-qualified man. (See Yuli Br. at 18–19.) Apparently to support a pattern of discrimination, Yuli alleges "that three other female administrators at Lakewood were similarly discriminated against." (Id. at 19.) The Defendants counter that the amended complaint "is largely gender neutral, and does not allege that any of the complained-of conduct that was allegedly directed at plaintiff resulted from her being a woman." (Inzelbuch Br. at 27.)

The Court finds that Yuli's allegations satisfy the liberal but-for standard at this stage in the proceedings. Yuli alleges that she performed her jobs satisfactorily at Lakewood because, among other reasons, the school's graduation and attendance rates improved during her tenure as principal. (See Am. Compl. at ¶ 16.) Despite these accomplishments, Yuli alleges the Defendants engaged in discriminatory conduct, transferred her to an elementary school, and replaced her with a lesser-qualified man. (See generally id.) The Defendants provide no legitimate reason to explain the transfer or preference for the allegedly lesser-

16

qualified man in support of their separate motions.  (See generally Inzelbuch Br.; Inzelbuch Reply Br.).  Considering the totality of circumstances, the Court finds that the amended complaint states factual material "compatible with discriminatory intent."  Marzano, 91 F.3d at 497.  Accordingly, because the Defendants do not persuade the Court that the complained-of conduct would not have occurred but-for Yuli's sex, the Court finds that the requirement is satisfied.  Id.

### B.  Hostile Work Environment

Yuli must also establish that the Defendants' conduct was sufficiently severe or pervasive to establish a viable hostile work environment claim.  Lehmann, 626 A.2d at 453.  Conduct is severe or pervasive when a reasonable woman would find her employment conditions sufficiently altered or hostile.  Id. at 458–59.  A female plaintiff need not experience offensive or harassing conduct, however, in order to establish a hostile work environment claim.  Id. at 457 ("A woman's perception that her work environment is hostile to women will obviously be reinforced if she witnesses the harassment of other female workers.  Therefore, we hold that the plaintiff need not personally have been the target of each or any instance of offensive or harassing conduct.").  Whether an employer's conduct sufficiently alters the employment conditions or is otherwise hostile depends upon the "totality of circumstances."  See Hargrave v. Cnty. of Atl., 262 F.Supp.2d 393, 413–14 (D.N.J. 2013).  The frequency and severity of the conduct are relevant considerations.  Id.

Yuli argues that the Defendants intimidated her "on nearly a daily basis" and "regularly denied [her] requests for basic materials needed to educate the children in her school." (Am. Compl. at ¶ 32.) Silva, on at least one occasion, "publically and falsely declared [Yuli was] unqualified for her position." (Yuli Br. at 9.) Yuli alleges that the Defendants ultimately "demoted" her and hired a lesser-qualified man as the replacement principal. (See Yuli Br. at 14.) According to Yuli, the Defendants replaced at least three other female employees during the same time period. (See id. at 19.)

The Defendants, in support of dismissal, argue that Yuli's allegations do not rise to the level of severe or pervasive conduct to support a hostile work environment claim. (See Inzelbuch Br. at 8–14.) In so arguing, the Defendants characterize the decision to replace Yuli with a male principal as an isolated act that cannot be construed as severe or pervasive discrimination. (See Inzelbuch Br. at 18.)

The Court finds, in considering the facts in the light most favorable to Yuli, that she alleges sufficient facts to state a hostile work environment claim under NJLAD. Yuli alleges that, as a result of the alleged discriminatory treatment, "she was intentionally interfered with in performing her duties as principal, she was forced to attend disciplinary proceedings and defend herself from false allegations of misconduct, she was publically called unqualified falsely and she was ultimately demoted." (Yuli Br. at 10.) The alleged discriminatory acts ultimately caused her constructive discharge. (See id. at 17.) Moreover, Yuli's allegation that three other female employees endured similar treatment supports her hostile work environment claim. Lehmann, 626 A.2d at 457 (holding that

the "plaintiff's work environment is affected not only by the conduct directed at herself but also the treatment of others").  Considering the totality of circumstances, the Court cannot hold that Yuli fails to state a hostile work environment claim at this early stage in the proceedings.  <u>Cutler v. Dorn</u>, 955 A.2d 917, 926 (N.J. 2008) (holding that factfinder should determine whether conduct is "objectively hostile"); <u>Gunther v. Shelter Grp.</u>, No. 13-4739, 2014 WL 3869940, at *6 (D.N.J. Aug. 7, 2014) (holding that factual inquiry regarding whether plaintiff met the "reasonable woman" standard for a hostile work environment claim is "inappropriate for resolution on a motion to dismiss").  Accordingly, the parts of the separate motions seeking to dismiss Yuli's hostile work environment claim will be denied.

## V.      Count III: NJLAD Aiding and Abetting

NJLAD prohibits persons from taking "reprisals against any person because that person … opposed any practices or acts forbidden" under the statute.  N.J.S.A. 10:5–12(d). Reprisals are acts that "coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of" any rights granted under NJLAD.  <u>Id.</u>  A plaintiff, in order to establish an aiding and abetting claim under NJLAD, must demonstrate that the defendants: (1) aided another in performing a wrongful act that caused an injury; (2) were aware of their role in the illegal activity at the time it was committed; and (3) knowingly and substantially assisted with the main violation.  <u>Tarr v. Ciasulli</u>, 853 A.2d 921, 929 (N.J. 2004).

The following factors determine whether a defendant provided substantial assistance to the main violator:  (1) the nature of the act encouraged; (2) the level of

supervisory assistance; (3) whether the defendant was present at the time of the alleged violation; (4) the defendant's relationship with other violators; and (5) the defendant's state of mind.  Id.  Aiders and abettors are liable for "active and purposeful" conduct. Cicchetti v. Morris Cnty. Sheriff's Office, 947 A.2d 626, 645–46 (N.J. 2008).

Supervisors have a duty to act against harassment under NJLAD.  See Hurley v. Atl. City Police Dep't, 174 F.3d 95, 126–27 (3d Cir. 1999).  The duty imputes an obligation upon supervisors to address conduct – whether active or passive – that condones employee harassment.  Id. at 126.  "When a supervisor flouts this duty, he subjects himself and his employer to liability."  Id.

Yuli argues that each Defendant "actively and purposefully" engaged in individual and collective discriminatory acts.  (Yuli Br. at 14; see generally Am. Compl.)  The majority of Yuli's allegations stem from the manner in which Inzelbuch, Silva, and Grunhut directed the Board.  (See Yuli Br. at 12–14.)  Inzelbuch, for example, "sought to eliminate" Yuli by "orchestrating false disciplinary proceedings, refusing to provide funding necessary for the proper performance of her job, [and] intentionally understaff[ing]" Lakewood.  (Id. at 13.)  Yuli alleges that Inzelbuch required her to "wait with her attorney until after midnight during one fraudulent disciplinary proceeding."  (Id.)

Yuli alleges that Silva pursued meritless disciplinary proceedings to justify her "demotion," among other actions.  (Id. at 14 (alleging that Silva denied her requests for resources, fabricated negative performance evaluations, publicly "lied and stated that [she] was not qualified to run" Lakewood, transferred her to an elementary school, and replaced her

with a lesser-qualified male principal).)   Finally, with respect to Grunhut, Yuli argues that he encouraged Inzelbuch and Silva to discriminate against her and pursued discriminatory actions in his supervisory capacity as the Board president.  (Id. at 14 (stating that Grunhut scheduled Board meetings "solely to humiliate Ms. Yuli, [and also] denied her pleas for resources, assisted in Defendant Silva's false performance evaluation, and ratified the decision to demote her").)

The Defendants, moving to dismiss Count III, argue that Yuli relies upon "bare allegations" that do not establish any "wrong that would give rise to a cause of action." (See Inzelbuch Br. at 21–22.)  The Court disagrees.  Accepting Yuli's allegations as true, the Court finds sufficient facts alleged in support of the claim to demonstrate that each individual Defendant actively and passively encouraged discriminatory acts in a supervisory capacity.  See Hurley, 174 F.3d at 127 (holding that aiding and abetting liability was "grounded in [the defendant's] failure to stop the harassment, which included both active and passive components").  Moreover, Yuli alleges that the Defendants knowingly committed discriminatory acts to cause her injuries.  Accepting these allegations as true, the Court finds a plausible claim that each Defendant provided sufficient supervisory assistance to meet the aiding and abetting standard.  See Ciasulli, 853 A.2d at 921 (aiding and abetting liability applies when employees engage in or encourage discriminatory conduct).  Accordingly, the Court will deny the parts of the separate motions seeking to dismiss this claim.

## VI.     Count V: Section 1983 and Section 1985 Equal Protection Claim

Yuli brings claims under Section 1983 and Section 1985 alleging that the Defendants violated her civil rights under federal and state law.  (See Am. Compl. at ¶¶ 67–72.)  Specifically, Yuli argues that the Defendants violated her right to equal protection under the law.  (See id. at ¶ 68; see also Yuli Br. at 18 ("Defendants acted in concert and deprived … Yuli of rights guaranteed to her, in part, by the United States Constitution, namely her right to equal protection under the law").)

### A.     Section 1983

Section 1983 applies to "[e]very person who under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  The statute, in and of itself, is not a source of substantive rights.  See Graham v. Connor, 490 U.S. 386, 393–94 (1989).  Rather, the statute provides "a method for vindicating federal rights elsewhere conferred."  Id. (internal quotation omitted).  Accordingly, to state a claim under Section 1983, a plaintiff must allege:  (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255–56 (3d Cir. 1994).

22

### 1.    Equal Protection

A plaintiff, to succeed on a Section 1983 equal protection claim, must demonstrate that a defendant's conduct: (1) had a discriminatory effect; and (2) was motivated by a discriminatory purpose.  <u>Bradley v. United States</u>, 299 F.3d 197, 205 (3d Cir. 2002).  The first factor requires the plaintiff to establish membership in a protected class and plead facts sufficient to demonstrate that the defendant treated the plaintiff differently than similarly-situated individuals.  <u>Id.</u> at 206.  The second factor is satisfied when the plaintiff demonstrates that the defendant "selected or reaffirmed a particular course of action at least in part 'because of' … its adverse effects upon an identifiable group." <u>Personnel Adm'r of Mass. v. Feeney</u>, 442 U.S. 256, 279 (1979).

Yuli, as a woman, is a member of a protected class.  <u>Clayton v. City of Atl. City</u>, 538 Fed.Appx. 124, 128 (3d Cir. 2013).  She alleges that the Defendants treated her negatively because of her sex and ultimately replaced her with a lesser-qualified man. (<u>See generally</u> Am. Compl.)  According to Yuli, the Defendants treated at least three other women in a similar manner.  (<u>Id.</u> at ¶ 44.)  Thus, although discovery may prove otherwise, the Court finds that Yuli states sufficient facts, accepted as true, to establish that the Defendants' conduct had a discriminatory effect and was motivated by a discriminatory purpose.  <u>See</u> <u>Williams v. W. Wayne Sch. Dist.</u>, No. 12-2704, 2013 WL 4718920, at *7 (M.D. Pa. Sept. 3, 2013) (denying motion to dismiss plaintiff's equal protection claim against the school district because plaintiff "alleged that she was discriminated against because of her membership in a suspect class and that [the] discrimination was the result

of an official practice or custom"). Accordingly, the Court will deny the parts of the separate motions seeking to dismiss Yuli's Section 1983 equal protection claim.

### 2. Constitutional Vagueness Defense

The Defendants argue that Yuli's constitutional allegations are "impermissibly vague." (Inzelbuch Br. at 29.) According to the Defendants, the amended complaint fails to state a constitutional claim because Yuli does not allege "specifically which defendant engaged in what wrongful conduct." (Id. at 29–30.) Yuli counters that the amended complaint states "numerous factual allegations" regarding the alleged discriminatory acts. (Yuli Br. at 22.) The Court agrees. As discussed at length, Yuli alleges specific details regarding each Defendant's participation in the alleged discriminatory acts. Accepting these allegations at true, the Court finds the Defendants have not stated a constitutional vagueness defense at this procedural juncture. Accordingly, because Yuli states a plausible constitutional claim, the Court will deny the parts of the separate motions seeking to dismiss the equal protection claim. Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

### B. Section 1985

A plaintiff must allege a conspiracy in order to state a Section 1985 claim. See Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997). Section 1985(3) requires that the plaintiff demonstrate that "two or more persons … conspire[d] … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection

of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).  Sex

is a protected class under Section 1985(3).  Farber v. City of Paterson, 440 F.3d 131, 135, 142

(3d Cir. 2006).

     Yuli brings a Section 1985 conspiracy claim alleging that the Defendants "acting

under color of law, conspired [to] intentionally … deprive … her civil rights."  (Am. Compl.

at ¶ 69.)  Yuli, for example, alleges that the Defendants "used their positions in

Lakewood to punish or 'get rid' of" her.  (Yuli Br. at 21.)  Yuli's arguments focus upon

the individual Defendants' collective actions as former Board leaders.  (See generally id.)

Yuli argues, for example, that "Silva and Inzelbuch worked in concert to drum up false

and offensive disciplinary charges against her … through … Grunhut."  (See Yuli Br. at

21.)  Yuli, in further support of a Section 1985 claim, alleges that the Defendants –

individually and collectively – declined to provide her school with necessary resources,

treated her with hostility "on nearly a daily basis," and ultimately "demoted" her.  (Id. at

3, 21.)

     The Defendants, moving to dismiss the Section 1985 claim, argue that the

amended complaint "contains no specific factual allegations to support a finding that a

conspiracy was entered into."  (Inzelbuch Br. at 28.)  According to the Defendants, the

Section 1985 claim must fail, because Yuli did not show "a discriminatory animus" and

"failed to allege the motive, the specific persons responsible, the conduct, and the timing

of the alleged conspiracy."  (Id. at 28.)  The Court disagrees.  The Court finds that,

granting all reasonable inferences in favor of Yuli, the amended complaint sufficiently

alleges facts that could support an inference that these individual Defendants entered into an agreement to discriminate against her.  (See generally Am. Compl.)  See also Iqbal, 556 U.S. at 678 (allegation establishing "more than an unadorned, the-defendant-unlawfully-harmed me accusation" sufficient to survive motion to dismiss).

### C.   Intracorporate Conspiracy Doctrine

The Defendants alternatively argue that the intracorporate conspiracy doctrine ("ICC Doctrine") bars Yuli's Section 1985 claim, because each Defendant was an agent of the Board.  (See Inzelbuch Br. at 29.)  The ICC Doctrine bars claims related to a defendant's actions that were made in an "official capacity."  See Gen. Refractories v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (internal citation omitted).  The ICC Doctrine is not without exceptions, however, and does not apply when corporate agents or employees act with mixed motives or pursuant to personal initiatives.  Id. at 313–14; see also Heffernan v. Hunter, 189 F.3d 405, 412 (3d Cir. 1999); Reeser v. NGK Metals Corp., 247 F.Supp.2d 626, 630–31 (E.D. Pa 2003).  Accordingly, the ICC Doctrine does not apply when employees act "for their sole personal benefit and thus outside the course and scope of their employment."  Heffernan, 189 F.3d at 412.

Apparently relying upon this exception, Yuli argues "[t]here is no indication that any of the Defendants, by stealing money or discriminating against women were acting in their official capacity."  (Yuli Br. at 21–22.)  With regard to Yuli's allegations, the Defendants do not demonstrate that any individual acted in an "official capacity."  (See generally Inzelbuch Br.; Inzelbuch Reply Br.)  In fact, no party in this case sets forth detailed facts sufficient for

26

the Court to determine whether the Defendants engaged in the complained-of conduct for personal gain or within an official capacity.  Limited facts, therefore, guide the Court's determination.  (See generally Inzelbuch Br.; Inzelbuch Reply Br.; Yuli Br.)  Drawing all reasonable inferences in Yuli's favor, which the Court is required to do at this stage, the Court cannot find that the Defendants acted within an official capacity.  See Iqbal, 556 U.S. at 678. Yuli provides sufficient facts that, accepted as true, demonstrate that the Defendants "actively and purposefully" engaged in individual and collective discriminatory acts, particularly in light of the Defendants' overlapping supervisory roles on the Board.  Santiago v. Warminster Twp., 629 F.3d 121, 132 (3d Cir. 2010) (holding that under Iqbal "supervisory liability claims are plausible in light of the non-conclusory factual allegations in the complaint").  Accordingly, the Court will deny the parts of the separate motions seeking to dismiss Yuli's Section 1985 claims.

## CONCLUSION

For the reasons stated above, the Court will deny the Defendants' separate motions to dismiss without prejudice.  The Court will issue an appropriate Order.


        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge


Date:        October 16, 2014

27